UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOUTHERN ILLINOIS LABORERS' AND EMPLOYERS HEALTH AND WELFARE FUND; NECA-IBEW WELFARE TRUST FUND; MIDWESTERN TEAMSTERS HEALTH AND WELFARE FUND; THE WELFARE FUND OF TEAMSTERS LOCAL UNION 863; PLUMBERS & PIPEFITTERS LOCAL UNION 630 WELFARE TRUST FUND; CLEVELAND BAKERS AND TEAMSTERS HEALTH AND WELFARE FUND; ELECTRICAL WORKERS BENEFIT TRUST FUND; FIRE & POLICE RETIREE HEALTH CARE FUND, SAN ANTONIO, LABORERS' DISTRICT COUNSEL BUILDING AND CONSTRUCTION HEALTH AND WELFARE FUND; LABORERS' DISTRICT COUNSEL HEAVY AND HIGHWAY UTILITY HEALTH AND WELFARE FUND, and NEW YORK CITY POLICE SERGEANTS BENEVOLENT ASSOCIATION HEALTH & WELFARE FUNDS, individually, and on behalf of all others similarly situated, <br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC.,<br><br>Defendant. | Case No. 06 C 1818<br><br>Judge John W. Darrah<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

Before the court is Pfizer, Inc.'s Motion to Compel Plaintiffs to Provide Documents,

1

Unredacted Claims Records, and Responses Concerning Pfizer's Proprietary Materials ("Pfizer's Mot."). [Dkt 133.] For the reasons set out below, the motion is granted.

**BACKGROUND**

The background of this case was set out in this court's prior opinion denying Plaintiffs' Motion to Modify Discovery. (Memorandum Opinion and Order ("November 14 Order").) [Dkt 166.] In summary, the plaintiffs are eleven healthcare benefit funds (collectively, "Plaintiffs") that pay for prescription medications for their members and those members' dependants. Plaintiffs' Second Amended Complaint alleges that defendant Pfizer conducted an illegal marketing scheme for its drug Lipitor that resulted in an artificially increased number of Lipitor prescriptions for which Plaintiffs were required to pay at improperly inflated prices. (Second Am. Compl. ¶¶ 3-5.) [Dkt 116.] Pfizer's motion to dismiss the Second Amended Complaint [dkt 153] is currently pending. The District Judge has extended discovery to March 31, 2008. [Dkt 176.]

Plaintiffs filed objections to this court's November 14 Order, which are still pending before the District Judge. [Dkt 173.] Subsequently, the parties filed a Joint Motion, asking that Plaintiffs' compliance with the November 14 Order be stayed because of the pending motions before the District Judge ("Jt. Mot."). [Dkt 177.] This court granted that motion, staying Plaintiffs' compliance with the November 14 Order until ten days after the District Court's final ruling on Plaintiffs' objections. [Dkt 180.]

In the present motion, Pfizer seeks documents and an answer to one interrogatory. Plaintiffs responded, arguing that the motion should be denied ("Pls.' Opp'n" [dkt 140]), and Pfizer filed a reply ("Pfizer's Reply" [dkt 141]). According to their Joint Motion to stay the November 14 Order,

the parties believe that a ruling on the present motion is necessary, notwithstanding the events described above and their own agreed "informal stay of discovery." (Jt. Mot. at 5.)

## ANALYSIS

I.  **Interrogatory No. 1 of Pfizer's Fourth Set of Interrogatories.**

According to Pfizer, Plaintiffs somehow acquired "over 2,200 pages, along with audio and video cassette tapes and CDS, of internal, confidential, proprietary, and apparently misappropriated, Pfizer materials that [Plaintiffs] referenced in their pleadings and produced to Pfizer during discovery." (Pfizer's Mot. at 12.) Pfizer propounded an interrogatory to one of the Plaintiff Funds, asking it to "identify the individual or individuals who provided to [Plaintiffs] documents and other items bates stamped as PLCONS 000001-002269, and describe the circumstances under which these documents and materials were given or shown to [Plaintiffs]." (Pfizer's Mot., Ex. E at 3.) The Plaintiff Fund objected to the interrogatory on the ground that the information is protected work product. (*Id.*)[1] In response to Pfizer's motion, Plaintiffs argue that their counsel interviewed those

---

[1] The Plaintiff Fund further objected to Interrogatory 1 on the ground that it called for information that was neither relevant nor reasonably calculated to lead to the discovery of relevant evidence. (Pfizer's Mot., Ex. E at 3.) Because Plaintiffs did not develop that argument in their Opposition (*see* Pls.' Opp'n at 11-13), and the court finds that the information meets the standard of relevance under Rule 26(b)(1) in any event, that objection is overruled.

Additionally, the Plaintiff Fund prefaced its Responses and Objections to Pfizer's interrogatories with a number of so-called "General Objections." (Pfizer's Mot., Ex. E at 2.) However, it is well-settled that general objections are insufficient to voice a successful objection. *See, e.g., St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.,* 198 F.R.D. 508, 511-12 (N.D. Iowa, 2000) (collecting cases). Fed. R. Civ. P. 33(b)(4) requires that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity." Rule 33(b)(1) provides that "the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." Similarly, Local Rule 33.1 of the Northern District of Illinois requires that "[w]hen objecting to an interrogatory or to the answer to an interrogatory, a party shall set forth the interrogatory or the interrogatories and answer thereto immediately preceding

3

individuals as part of counsel's pre-suit investigation and that answering Interrogatory 1 would reveal attorney mental impressions and trial strategy, which are protected by the work product doctrine. ( Pls.' Opp'n at 12.)

The work product doctrine protects "*documents and tangible things* otherwise discoverable . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed. R. Civ. P. 26(b)(3), emphasis added. While "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" are protected by the work product doctrine, *id.*, the disclosure of *facts* cannot be precluded simply because the facts were learned by an attorney. *See Hickman v. Taylor*, 329 U.S. 495, 504, 506-07 (1947) (stating that "[a] party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney"). *See also* Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 488 (American Bar Association 4th ed. 2001) (stating that "the work-product protection cannot be asserted to prevent disclosure of the underlying facts, which are discoverable in any adversary proceeding"); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*: Civil 2d § 2023 at 330 (2d ed. 1994) (stating that courts consistently hold that the work product concept furnishes no shield against discovery of the persons from whom an attorney has learned facts).[2]

---

the objection." In other words, the interrogatory to which the objection is made must be set out, followed by any objection to the interrogatory. Thus, reciting a litany of "General Objections" as a preface, leaving the propounding party and the court to guess which, if any, are applicable to any particular interrogatory, is not authorized or recognized by the Federal Rules of Civil Procedure or the Local Rules of the Northern District of Illinois.

[2]*See also Clark Equip. Co. v. Lift Parts Mfg. Co.*, 1985 WL 2917 at *7 (N.D. Ill. Oct. 1, 1985) (Holderman, J.) (holding that "[t]he attorney work product privilege *does not* preclude the disclosure of *facts* or the identity of witnesses or documents simply because their existence was

Here, Pfizer is not seeking documents or tangible things that might include reference to Plaintiffs' counsel's strategy, but rather factual information: from whom specific documents were obtained and under what circumstances. As Pfizer argues, the persons who provided the documents are likely to have information relevant to Plaintiffs' claims and may be witnesses in the litigation. (Pfizer's Mot. at 13, 14.) Indeed, information about the source of the documents would likely be part of the authenticating foundation for any use of the documents as evidence. *See* Fed. R. Evid. 901.

In opposition, Plaintiffs cite two California cases in which defendants sought to compel plaintiffs to identify the employees who had provided information that plaintiffs' counsel used to draft the allegations of the complaint. *In re MTI Tech. Corp. Sec. Litig. II*, 2002 WL 32344347 at *1 (C.D. Cal. June 13, 2002) (Carter, J.) and *In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 386 (S.D. Cal. 2002). The courts in those cases interpreted the defendants' interrogatory as seeking in effect the disclosure of plaintiffs' counsel's selection of witnesses to interview. *MTI*, 2002 WL 32344347 at *3; *Ashworth,* 213 F.R.D. at 388-89. The court in *Ashworth* observed that whether such information was protected work product was "unclear," but concluded that compelling an answer to the interrogatory created "a reasonable possibility" that the identity of persons the plaintiffs' counsel selected to interview "could be ferreted out," and "would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their

---

discovered by counsel"); *Stewart v. Gen. Motors Corp.*, 1988 WL 6927 at *4 (N.D. Ill. Jan. 27, 1988) (Hart, J.) (holding that plaintiff is entitled to learn who has seen a copy of a privileged letter at issue, because "information about sources of information, who has worked on the documents, and who has possessed the documents" is not covered by the work product doctrine); *Patterson v. Burge*, 2007 WL 1317128 at *2 (N.D. Ill. May 4, 2007) (Brown, M.J.) (compelling plaintiff to testify as to any factual information of which he is aware regarding his case, regardless of whether that information was obtained in the course of his investigations, because "[f]actual information that [a plaintiff] has about [its] case . . . is not protected work product").

5

testimony/factual knowledge, and would link any future statements by the witnesses with [p]laintiff's counsel's legal theories and conclusions as outlined in the complaint. "*Ashworth,* 213 F.R.D. at 387-89.

In declining to compel the disclosure, the court in *Ashworth* acknowledged that other courts have taken a different view. 213 F.R.D. at 387-88.[3] *See, e.g., In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 631, 634, 636 (N.D. Ga. 2002) (ordering plaintiffs to disclose the names of individuals upon whom they relied in making allegations in their complaint because "names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine"); *Brody v. Zix Corp.*, 2007 WL 1544638 at ** 1, 2 (N.D. Tex. May 25, 2007) (Kaplan, M.J.) (compelling plaintiffs to identify several former employees of defendant who were referred to in plaintiffs' complaint as "confidential sources," along with all communications between those sources and plaintiffs or their counsel).

Here, there is no need to resolve that issue because the information sought by Pfizer's interrogatory is plainly different from that involved in the *Ashworth* and *MTI* cases. Identifying the source of specific documents will not reveal the mental processes or litigation strategy of Plaintiffs' counsel. On the contrary, the provenance of the documents is relevant to their admissibility as evidence. Thus, the objection to Interrogatory No. 1 of Pfizer's Fourth Set of Interrogatories is

---

[3]Interestingly, the court in *Ashworth* found "unpersuasive" the decision in *American Floral Servs., Inc. v. Florists' Transworld Delivery Assn.*, 107 F.R.D. 258 (N.D. Ill. 1985). *Ashworth*, 213 F.R.D. at 387 n 4. However, the court in *American Floral* drew a distinction between the disclosure that it ordered in that case - - the names of two of defendant's employees who had provided information to plaintiff's counsel to confirm plaintiff's counsel's suspicions about deficiencies in defendant's document production - - and a prior case in which the court had declined to compel plaintiff's counsel to identify the persons counsel had interviewed in the course of preparing the case. *American Floral*, 107 F.R.D. at 261.

overruled, and Plaintiffs must answer that interrogatory.

## II.  Pfizer's document requests.

### A.  <u>Relevance</u>.

Pfizer's motion recites a list of scores of document requests that it claims Plaintiffs have either not satisfied or have not satisfied completely. (Pfizer's Mot. at 5-9.) To cite just a few examples, in June 2007, Plaintiffs agreed to produce documents identifying the name of any physician who prescribed Lipitor for an off-label purpose (Doc. Req. 7), documents reflecting payments by Plaintiffs for Lipitor from 2002 to present (Doc. Req. 8), documents reflecting payments by Plaintiffs for Lipitor prescribed for an off-label purpose from 2002 to present (Doc. Req. 9), and contracts between Plaintiffs and any other entity concerning payment for Lipitor for the Plaintiff Funds' participants (Doc. Req. 12). (Pfizer's Mot., Ex. A at 4-6.) According to Pfizer, Plaintiffs have produced nothing in response to Requests 7 and 9, and nothing or incomplete production in response to Requests 8 and 12. (Pfizer's Mot. at 5, 8.)

Plaintiffs' Opposition does not attempt to discuss any individual request. Instead, Plaintiffs make essentially the same two broad-stroke arguments that they made in their Motion to Modify Discovery: First, that "[m]uch of the information Pfizer seeks to compel is no longer relevant" (Pls.' Opp'n at 5); and second, that the requests are unduly burdensome because they seek information not in Plaintiffs' control. (*Id*. at 7.)

Plaintiffs' arguments fall short. To start, although Plaintiffs describe twelve of the Requests as irrelevant under the theory of their Second Amended Complaint (Pls.' Opp'n at 7), that still leaves a multitude of other Requests that are indisputably relevant, even under the Plaintiffs' view

7

of their Second Amended Complaint. By way of illustration, those include, but are not limited to the following: Documents sufficient to determine the amount of damages alleged (Doc. Req. 10); documents regarding Plaintiffs' initial determination to pay for Lipitor (Doc. Req. 19); documents provided to participants or physicians by Plaintiffs regarding reimbursement or payment for Lipitor (Doc. Req. 21); any statement about Lipitor that Plaintiffs relied upon (Doc. Req. 29); and any Lipitor ad or promotional piece relied upon by Plaintiffs (Doc. Req. 30).

Second, Plaintiffs' argument that discovery about their own experience in reimbursing their participants for Lipitor, and particularly Plaintiffs' payments for allegedly improper prescriptions for off-label purposes, is now irrelevant ignores some of Plaintiffs' own allegations in the Second Amended Complaint. (*See* Nov. 14 Order at 5-6.) The Second Amended Complaint asserts that Plaintiffs were the victims of a fraudulent marketing scheme by Pfizer for the over-promotion of Lipitor, which, Plaintiffs allege, "increased the demand and expanded the market for Lipitor, artificially driving up Lipitor's price and thereby damaging the Plaintiffs. . . ." (Jt. Mot. at 3.) Additionally, as further described in the November 14 Order, the Second Amended Complaint continues the allegations that Plaintiffs paid for an increased number of Lipitor prescriptions as a result of the scheme. (Nov. 14 Order at 6.) Thus, documents that would demonstrate, for example, the amounts that Plaintiffs paid for Lipitor over time, and whether Plaintiffs actually paid for an increased number of prescriptions of Lipitor as a result of Pfizer's alleged marketing scheme, are well within the scope of discovery under the Federal Rules of Civil Procedure.

Thus, Plaintiffs' current refusal to produce previously-agreed documents on the ground that those documents are now irrelevant is overruled.

B.  Burdensomeness.

As was the case with Plaintiffs' Motion to Modify Discovery, Plaintiffs' current objections to production on the basis of burdensomeness are general and lacking in factual support. Plaintiffs complain that they do not "possess or control much of the individual physician and patient information Pfizer seeks." (Pls.' Opp'n at 7-8.) That, of course, begs the question of what information Plaintiffs *do* possess or control. Plaintiffs' Opposition provides the court no affidavits or even descriptions of what information Plaintiffs maintain about the Plans they administer, the benefits they provide, and the prescriptions for which they have paid. Even a cursory review of Pfizer's document requests discloses many categories that can certainly be expected to be in Plaintiffs' possession, custody or control, including but not limited to the following: Documents identifying any accountant retained by Plaintiffs to assist with reimbursement for Lipitor (Doc. Req. 54); documents relating to meetings where a presentation about Lipitor was made to the Plaintiffs or their employees (Doc. Req. 56); any annual or scheduled audit of benefits provided to participants (Doc. Req. 59); any audit of Plaintiffs conducted within the past 5 years (Doc. Req. 62); reports, recommendations or analysis relating to Lipitor that were provided by any consultant to Plaintiffs' trustees (Doc. Req. 64); documents identifying individuals responsible for reviewing claims submitted by participants (Doc. Req. 72).

As for individual patient and physician information, Plaintiffs argue that it was an "enormous burden" to comply with the court's earlier order to produce the off-label Lipitor prescriptions for one Plaintiff Fund. (Pls.' Opp'n at 2.) They further assert that "certain doctors and medical groups" resisted Plaintiffs' efforts to obtain information to comply with the order, citing state privacy laws. (*Id*. at 3.)

9

There are several problems with Plaintiffs' burdensomeness argument. First, it lacks any evidentiary support in the form of affidavit or declaration providing specifics about such topics as: What records Plaintiffs themselves maintain in the course of administering benefits; whether some or all of the Plaintiffs maintain records of the prescriptions for which they have paid; whether the Plan documents for each Plaintiff Fund contain a cooperation clause (as might be expected) requiring the participants and medical providers obtaining benefits to cooperate with the Funds in seeking reimbursement; how many medical providers refused to produce patient records; and whether the Funds sought participant cooperation to obtain the records, and so on. An objection to producing relevant documents on the basis of burdensomeness must be supported by a factual basis. Counsel's argument in a brief, unsupported by evidence, is not sufficient to sustain a burden of providing evidence. *USA v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007).

Second, Plaintiffs are simply incorrect in arguing that the medical providers were entitled to object on the basis of state privacy laws. (Pls.' Opp'n at 3.) Plaintiffs cite the district court opinion in *National Abortion Federation v. Ashcroft*, 2004 WL 292079 (N.D. Ill. Feb 6, 2004) (Kocoras, C.J.), for the proposition that Illinois' more restrictive medical information disclosure laws controlled over the application of HIPAA. However, while affirming the district court on a different ground, the Seventh Circuit overruled the district court's conclusion on the point Plaintiffs argue:

> [W]e agree with the government that the HIPAA regulations do not impose state evidentiary privileges on suits to enforce federal law. Illinois is free to enforce its more stringent medical-records privilege (there is no comparable federal privilege) in suits in state court to enforce state law and, by virtue of an express provision in Fed. R. Evid. 501, in suits in federal court (mainly diversity suits) as well in which state law supplies the rule of decision. But the Illinois privilege does not govern in federal-question suits, such as the suit in the Southern District of New York.

*Northwestern Memorial Hospital v Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004).

In this case, Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1331, based on their claims under the RICO statute, 18 U.S.C. § 1962. (Second Am. Compl. ¶ 22.)[4] Accordingly, Plaintiffs cannot use state law privileges as a justification for refusing to produce documents and information.

The Seventh Circuit affirmed the quashing of the subpoena in the *Ashcroft* case because the probative value of the information was "meager" compared to the invasion of privacy of women whose records were sought and were not in any way involved in the case. 362 F. 3d at 929-30. In this case, the information Pfizer seeks goes directly to the question of whether Plaintiffs paid for more Lipitor prescriptions than necessary and whether Plaintiffs paid too much for Lipitor. That is the heart of Plaintiffs' claims. Unlike the women whose records were sought in *Ashcroft*, the participants here are the beneficiaries of the Plaintiffs; they will presumably benefit from any recovery obtained in this case. Any concerns about privacy can be dealt with through the Protective Order previously entered in this case.

Finally, as discussed in the November 14 Order, the issue is not whether producing the discovery is a burden; it is whether the burden is "undue" in light of the factors set out in Fed. R. Civ. P. 26(b)(2)(C)(iii). (Nov. 14 Order at 7.) The information is relevant to the issues of both causation and damage. Plaintiffs here are not individuals. They are benefit funds seeking billions of dollars in damages. Plaintiffs have not demonstrated that the burden of production is undue.

---

[4] Plaintiffs also allege diversity jurisdiction, but one of the Plaintiffs is a New York City Police Sergeants Fund that also asserts claims on behalf of third-party payors located in New York. (Second Am. Compl. ¶ 1.) Pfizer is a Delaware corporation with its principal place of business in New York (*Id.* ¶ 19), and, thus, is a citizen of both Delaware and New York. 28 U.S.C. § 1332 (c)(1). Accordingly, federal jurisdiction cannot be premised on diversity.

## III. Redaction of information about participants.

According to Pfizer, seven of the Plaintiff Funds have produced information about Lipitor prescriptions for which they paid, but four of those have redacted identifying participant information, such as names and dates of birth. (Pfizer's Mot. at 10.) The Protective Order previously entered by the District Judge with the agreement of the parties specifically identified the "Names of customers or patients" as information that could be designated "Confidential" and held subject to the Protective Order. (Stipulation and Order for Protection of Confidential Information ¶ 2(a).) [Dkt 48.]

Plaintiffs do not argue that the Protective Order is not sufficient or should be modified. Instead, they want to avoid any identification of participants, claiming that Pfizer intends to use the individual participants' information for harassment. (Pls.' Opp'n at 8.) Plaintiffs argue that the individual participants' information is of limited relevance because they - - Plaintiffs - - do not plan to use it in their case. (*Id*. at 9.) However, as discussed above and in the November 14 Order, Pfizer has a right to discovery that will test the validity of Plaintiffs' allegations that they paid for an "artificially increased number of Lipitor prescriptions." (Second Am. Compl. ¶ 4.) Apparently, Pfizer intends to use the medical records of the participants for whom Lipitor was allegedly improperly prescribed to demonstrate that the prescription was not the result of improper marketing, and thus undermine any opinions Plaintiffs' experts may draw about Pfizer's marketing causing an expanded demand and inflated price. (Pfizer's Reply at 11.) The identity of the participant whose Lipitor prescription was paid by Plaintiffs is necessary in order to obtain and relate the medical data.

Whether or not the records will support Pfizer's position is not the question at the discovery stage. The information is within the scope of discovery. There is a Protective Order in place to preserve confidentiality. Accordingly, Plaintiffs' objection to providing that information subject to

the Protective Order is overruled.

## CONCLUSION

For the foregoing reasons, Pfizer's Motion to Compel is granted. Plaintiff New York City Police Sergeants Benevolent Association Health & Welfare Funds must serve a sworn answer to Interrogatory 1 no later than January 8, 2008. Plaintiffs must produce responsive documents no later than January 18, 2008.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

December 21, 2007